IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| SHAUN MOUZON, | * |
| Plaintiff, | * |
| v. | *     Civil Action No. RDB-16-156 |
| OFFICER CHARLES MEWSHAW, et al., | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Shaun Mouzon ("plaintiff" or "Mouzon") has filed this action alleging that defendant police officers Charles Mewshaw, Torran Burrus, Fabien Laronde, Chris Szakolczai, and Kevin Saliba (collectively, "defendants") violated 42 U.S.C. § 1983 and committed several state-law torts on the evening of January 28, 2013. (ECF No. 47.) On that evening, the officers stopped Mouzon's vehicle for an alleged traffic offense, which led to a confrontation which resulted in Mouzon being shot numerous times.

Now pending before this Court is defendants' Motion for Summary Judgment ("Defendants' Motion") (ECF No. 40). This Court conducted a hearing on the pending Motion on July 17, 2017.[1] (ECF No. 63.) For the reasons stated below, Defendants' Motion (ECF No. 40) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to plaintiff's false arrest and false imprisonment claims (Counts II and III). The Motion is also GRANTED as to plaintiff's claims regarding the legality of the initial

---

[1] At the hearing, this Court also addressed several pending Motions *in Limine*. (ECF No. 65.)

1

stop and defendants Burrus and Laronde's "bystander liability" under § 1983 (Count VII). Defendants' Motion is DENIED as to plaintiff's battery claims (Count I) and plaintiff's excessive force claims under § 1983 (Count VII), which are asserted against all five defendant officers. The Motion is also DENIED as to Mouzon's malicious prosecution claim against defendant Laronde only (Count X).

## BACKGROUND

In ruling on a Motion for Summary Judgment, this Court must view all facts in the light most favorable to the non-moving party. *Lee v. Town of Seaboard*, ---F.3d---, 2017 WL 2989483, at \*1 (4th Cir. July 14, 2017). *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015).

Plaintiff alleges that defendants violated his civil rights and committed state-law torts by using excessive force against him during an unlawful traffic stop on the evening of January 28, 2013. (ECF No. 47 at ¶¶ 12-25.) That night, plaintiff was driving his car in West Baltimore when defendants Mewshaw, Laronde, and Burrus, driving in a patrol car, observed Mouzon's vehicle commit several traffic violations. In particular, the officers saw Mouzon turn right onto Edmondson Avenue from Dennison Street without stopping at the stop sign on Dennison. (ECF No. 40-7.)[2] Mouzon's vehicle then stopped behind other cars on Edmondson Avenue awaiting a red light at the intersection of Hilton Street. (*Id.*) The officers followed Mouzon's vehicle onto Edmondson Avenue and stopped their vehicle directly behind Mouzon's. (*Id.*) The unmarked patrol car's emergency lights were

---

[2] This exhibit is a video taken from surveillance camera at the intersection of Dennison Street and Edmondson Avenue.

illuminated, and the officers quickly exited their vehicle with their guns drawn.  (*Id.*) Defendants Szakolczai and Saliba arrived on the scene in a separate vehicle, drew their weapons, and approached Mouzon's vehicle.  (*Id.*)

Following a brief exchange, some of the defendant officers, apparently fearing that Mouzon would either shoot or otherwise injure them, fired their weapons at Mouzon, striking him numerous times.  *See, e.g.,* ECF No. 40-3 at 6-7.  Plaintiff nevertheless navigated his vehicle through the intersection, but ultimately lost control of his vehicle and crashed into a curb.  (ECF No. 57-8 at 5.)  Plaintiff was found to be unarmed when the police approached his vehicle after firing at him.  (*Id.* at 9.)  Plaintiff was taken to the University of Maryland Shock Trauma Center, where he underwent extensive treatment to recover from the gunshot wounds.  (*Id.* at 5.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs*, 780 F.3d at 569 (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

## DISCUSSION

This Memorandum Opinion addresses only those counts of plaintiff's Amended Complaint (ECF No. 47) which remain pending following the July 17, 2017 Hearing.[3]

### I.   Count I – Battery

Defendants raise two arguments in support of their Motion for Summary Judgment on plaintiff's battery claims. First, defendants Burrus and Laronde argue that because they never shot or otherwise touched plaintiff, they did not commit a battery as a matter of law. (ECF No. 40-1 at 21.) Second, defendants Mewshaw, Saliba, and Szakolczai assert that their shooting of Mouzon was legally justified based on their reasonable fear of imminent harm—whether by a weapon or by his vehicle—by Mouzon. (*Id.* at 20.)

---

[3] Count IV (Conversion) and Count V (Intentional Infliction of Emotional Distress) were withdrawn by counsel of counsel, as set forth in this Court's Order dated July 12, 2017. (ECF No. 54.) As noted herein, other counts were withdrawn in whole or in part during the Hearing.

With respect to defendants Burrus and Laronde, plaintiff argued during the July 17 Hearing that there exists a genuine issue of material fact as to whether these officers fired their weapons at him.  Specifically, Mouzon relies on his own deposition testimony, during which he stated that both Laronde and Burrus shot at him.  (ECF No. 64 at 32-38.)  As to defendants' second argument—that they acted in self-defense—Mouzon argues that there exist genuine issues of material fact as to the reasonableness of the officers' fear of imminent harm.  (ECF No. 46-1 at 20-21.)

Under Maryland law, "[a] battery is a harmful or offensive contact with a person resulting from an act intended to cause the person such contact." *Northfield Ins. Co. v. Boxley*, 215 F. Supp.2d 656, 661-62 (D. Md. 2002) (citing *Saba v. Darling,* 320 Md. 45, 575 A.2d 1240, 1242 (1990)).  "A touching is harmful if it causes physical pain, injury, or illness, and it is offensive if it offends a person's reasonable sense of dignity." *Id.*  *See Robinson v. Cutchin*, 140 F. Supp. 2d 488 (D. Md. 2001).

Viewing the evidence presented "'in the light most favorable to the' nonmoving party," as this Court must, there exist genuine issues of material fact regarding (1) whether Laronde and Burrus fired at Mouzon and (2) whether all of the shooting officers' use of force was legally justified or done in self-defense. *Jacobs*, 780 F.3d at 568–69 (quoting *Tolan*, 134 S. Ct. at 1865).  Although the Baltimore Police Department's ("BPD") investigation concluded that only Officers Mewshaw, Saliba, and Szakolczai fired their weapons on the night in question, Mouzon specifically identifies Burrus and Laronde as shooters in his sworn deposition testimony.  (ECF Nos. 57-8, 57-9; ECF No. 64 at 32-38.)  While the BPD reports and Mouzon's admittedly limited ability to view and identify the shooters may

5

undermine his testimony at trial, "[s]ummary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs*, 780 F.3d at 569 (quoting 10A Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice & Procedure* § 2728 (3d ed. 1998)). Accordingly, Defendants' Motion must be DENIED as to plaintiff's battery claim (Count I), as to all five defendant officers.

## II.    Counts II and III – False Arrest and False Imprisonment[4]

Defendants argue that because their initial stop of Mouzon was legally justified based on Mouzon's violation of traffic laws in the officers' presence, plaintiff is unable to prove his false arrest and false imprisonment claims as a matter of law. (ECF No. 40-1 at 10.)

Plaintiff argues in opposition that his alleged violation of traffic laws does not justify the officers' seizure of him. (ECF No. 46-1 at 23.) At the July 17 Hearing, plaintiff's counsel cited portions of Maryland's Transportation Code for the proposition that the violation of traffic laws typically does not lead to the offender's arrest. *See* Md. Code Ann., Transp. § 26-201.

Under Maryland law, "[t]he elements of the tort of false imprisonment are as follows: '1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification.'" *Jones v. Chapman*, ELH-14-2627, 2017 WL 2472220 at *24 (quoting *Jones v. NMS Health Care of Hyattsville, LLC*, 903 F. Supp. 2d 323, 330-31 (D. Md. 2012)). *See Heron v. Strader*, 361 Md. 258, 264, 761 A.2d 56, 59 (2000). "Any exercise of force, or threat of

---

[4] "In Maryland, the tort of false imprisonment is largely identical to the tort of false arrest." *Chapman*, 2017 WL 2472220 at *23 (D. Md. June 7, 2017) (citing *Okwa v. Harper,* 360 Md. 161, 189-190, 757 A.2d 118, 133 (2000). Thus, Counts II and III of plaintiff's Amended Complaint are addressed together.

force, which deprives the plaintiff of his or her liberty is an imprisonment." *Chapman*, 2017 WL 2472220 at *24.

While Mouzon notes that traffic violations do not typically result in arrests, Judge Hollander of this Court thoroughly explained in *Chapman* that:

> "In general, Maryland law does not authorize a police officer to arrest a motorist for a minor traffic offense, such as unsafe backing up of a vehicle or stopping a vehicle in an intersection, unless additional circumstances are present. *See generally* [Md. Code.] Transp. § 26–202 (delineating power of arrest for violations of the Maryland Vehicle Law). Rather, such offenses are ordinarily resolved by the issuance of a citation. *See* [*id.*] § 26–201.
>
> "Nevertheless, an arrest for the offense of unsafe backing of a vehicle or stopping a vehicle would not offend the Fourth Amendment. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." [*Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001)] (concluding that Fourth Amendment was not violated by arrest of motorist for seatbelt violation, a misdemeanor punishable only by a fine); *see also* [*Virginia v. Moore*, 553 U.S. 164, 176, 128 S. Ct. 1598, 1607 (2008)] ("[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and ... while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."); [*Pegg v. Herrnberger*, 845 F.3d 112, 118 (4th Cir. 2017)] (same).

*Chapman*, 2017 WL 2472220, at *26.

In this case, the undisputed surveillance video evidence shows plaintiff's vehicle turn onto Edmondson Avenue from Dennison Street without stopping at the stop sign on Dennison Street. (ECF No. 40-7.) *See* Md. Code Ann., Transp. § 21-201. Thus, plaintiff violated at least one traffic law in the presence of the pursuing police officers, and the officers had a legal justification to stop Mouzon's vehicle. Accordingly, plaintiff is unable to prove his false arrest and false imprisonment claims as a matter of law, and defendants are entitled to summary judgment thereon.

### III.   Count VII – § 1983 – Violation of 4th and 14th Amendments[5]

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983. Section 1983 does not create "substantive rights;" rather, it provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

Plaintiff's § 1983 claims in this case are premised on two distinct activities. First, plaintiff asserts that defendants violated his constitutional rights by stopping his vehicle without legal justification. Second, plaintiff asserts that defendants violated his rights by using excessive force against him. These issues are addressed in turn.

### A. Defendants' Initial Stop of Plaintiff's Vehicle Was Legally Justified

"Traffic stops are justified at their inception when officers observe a violation of the applicable traffic laws." *United States v. Davis*, 460 F. App'x 226, 230 (4th Cir. 2011) (quoting *United States v. Branch,* 537 F.3d 328, 335 (4th Cir. 2008)). *See also United States v. Hassan El*, 5

---

[5] At the July 17, 2017 Hearing, counsel for plaintiff WITHDREW Mouzon's claims under Articles 24 and 26 of the Maryland Declaration of Rights (Count VI) as duplicative of his claims under § 1983.

 This Court notes that if defendants had asserted a qualified immunity defense—which they have not—plaintiff would have had reason to pursue his state law constitutional claim, as "qualified immunity is not a defense to an excessive force claim brought under Articles 24 and 26 of the Maryland Declaration of Rights." *Chapman*, 2017 WL 2472220, at *33 (citing *Littleton v. Swonger,* 502 Fed. Appx. 271, 274 & n. 2 (4th Cir. 2012)). A qualified immunity defense would not have been viable in this case, as "it has long been clearly established 'that 'officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity.'" *Chapman*, 2017 WL 2472220, at *34 (quoting *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 734 (4th Cir. 2013)).

F.3d 726, 731 (4th Cir. 1993) (failure to stop at stop sign was sufficient basis to detain defendant). The analysis set forth above in the context of plaintiff's false arrest/false imprisonment claims (Section II, *supra*) also applies to plaintiff's claims regarding the legality of the initial stop under the Fourth Amendment. Because the officers observed plaintiff violate Maryland's traffic laws when Mouzon went through the Dennison Street stop sign without stopping, they had reasonable suspicion to stop his vehicle. Accordingly, Defendants' Motion must be GRANTED with respect to the legality of the initial stop.

### B. There Exist Genuine Issues of Material Fact Regarding the Reasonableness of the Defendant Officers' Use of Force

The core issue presented in this case is whether the defendant officers acted reasonably or in self-defense when they fired at Mouzon on the evening of January 28, 2013, or whether their use of force was excessive.[6] Defendants argue that viewing their actions "from the perspective of a reasonable officer on the scene," they were legally justified in using force against Mouzon because (1) they believed at that time that he possessed a firearm and (2) Mouzon's driving posed an imminent threat of bodily harm to them. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). (ECF No. 40-1 at 14.) Plaintiff argues that there exist genuine issues of material fact regarding the reasonableness of defendants' actions, as plaintiff was not in possession of a firearm and, Mouzon asserts, his vehicle posed no danger to the officers. (ECF No. 46-1 at 20.)

---

[6] While defendants Burrus and Laronde argue that they are not subject to liability under § 1983 for using excessive force because they did not fire their weapons, the same analysis set forth in the above discussion of plaintiff's battery claim (Section I, *supra*) also applies here. As there exist genuine issues of material fact as to whether Burrus and Laronde shot Mouzon, so, too, do there exist genuine issues of material fact regarding whether the alleged use of force—if established—was reasonable.

The law governing excessive force claims under § 1983 is eloquently summarized by Judge Hollander in her recent opinion in *Chapman*:

> "Claims brought under 42 U.S.C. § 1983, alleging the use of excessive force in effectuating an arrest or other seizure, are governed by the Fourth Amendment's prohibition against "unreasonable" seizures. *Graham,* 490 U.S. at 395. Reasonableness is analyzed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8 (1985) (internal quotation marks omitted); *see also Graham*, 490 U.S. at 396 ("Determining whether the force used to effect a particular seizure is 'reasonable'" involves a balance of the individual's Fourth Amendment interests against the government's interests).
>
> "The operative question in excessive force cases is 'whether the totality of the circumstances justifies a particular sort of search or seizure.'" *County of Los Angeles v. Mendez*, ---U.S.---, 2017 WL 2322832, at *6 (May 30, 2017). Of relevance here, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Moreover, such claims are "evaluated ... based upon the information the officers had when the conduct occurred." *Saucier v. Katz,* 533 U.S. 194, 207 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).
>
> "To determine whether excessive force was used, the Fourth Circuit has said: "We determine whether an officer has used excessive force to effect an arrest based on a standard of 'objective reasonableness,' taking into account 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Meyers v. Baltimore Cnty., Md.,* 713 F.3d 723, 732-33 (4th Cir. 2013) (quoting *Graham,* 490 U.S. at 396). Courts have also considered the extent of the injury caused by the use of force in determining whether the use of that force was reasonable. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).
>
> "When analyzing the objective reasonableness of the amount of force used by a law enforcement officer, the Fourth Circuit has cautioned courts not to adopt a "segmented view of [a] sequence of events." *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). This is because such an approach "miss[es] the forest for the trees." *Id.* Instead, the Fourth Circuit has instructed: "The better way to assess the objective reasonableness of force is to view it in full context, with an eye toward the proportionality of the force in light of all the

circumstances. Artificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness."

*Chapman*, 2017 WL 2472220, at *26–27.

Here, there exist genuine issues of material fact regarding the reasonableness of the officers' use of force against Mouzon on the night of January 28, 2013. Thus, Defendants' Motion must be DENIED as to plaintiff's excessive force claim under § 1983, and a jury will be charged with deciding whether, based on all of the evidence presented, the officers' actions were reasonable.

### C. Plaintiff's Bystander Liability Theory is Without Merit

Plaintiff also asserts that defendants Burrus and Laronde may be liable under § 1983 on a theory of "bystander liability" based on their alleged failure to stop their fellow officers' use of force against Mouzon. (ECF No. 46-1 at 22.)

As this Court explained in *Smith v. Aita*, "[t]o succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer '(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act.'" *Smith v. Aita*, CCB-14-3487, 2016 WL 3693713, at *4 (D. Md. July 12, 2016) (quoting *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 417 (4th Cir. 2014)). *See Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002).

In the instant case, there is no evidence that Burrus or Laronde "had a reasonable opportunity to prevent the harm" to Mouzon or that they "chose not to act." *Aita*, 2016 WL 3693713 at *4. Indeed, as the surveillance video footage makes clear, no more than thirty seconds passed between the time the officers exited their vehicles on Edmondson Avenue and the time when Mouzon's vehicle passed through the red light where he had

11

been stopped—that is, after he had been shot. (ECF No. 40-7.) While plaintiff generally asserts that these officers "had a duty to protect Mr. Mouzon from the unjustified attack of his [*sic*] inferior officers," plaintiff has produced no evidence showing that Burrus or Laronde has an opportunity to do so. Accordingly, defendants Burrus and Laronde are entitled to summary judgment on plaintiff's bystander liability theory.

## IV. Count IX – Malicious Prosecution / Abuse of Process[7]

"The elements of malicious prosecution are: 1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff." *Heron*, 361 Md. At 264, 761 A.2d at 59.

In their briefs and at the July 17 Hearing, the parties' arguments regarding the viability of plaintiff's malicious prosecution claim rested not on the presence or absence of certain elements of the claim, but, rather, on whether the bringing of handgun possession charges against Mouzon is properly attributable to defendant Laronde.

Defendant Laronde argues that because the Statement of Charges (including the handgun violations) filed against Mouzon were drafted by the Maryland District Court Commissioner who reviewed Mouzon's Application for Statement of Charges ("Application"), Laronde should not be held responsible for the decisions—even if mistaken—of the charging Commissioner. (ECF No. 57 at 12-13.) *Compare* "Application for Statement of Charges" (ECF No. 40-9) with "Statement of Charges" (ECF No. 46-10).

---

[7] At the July 17, 2017 Hearing, counsel for plaintiff WITHDREW Mouzon's malicious prosecution claim against defendants Mewshaw, Burrus, Szakolczai, and Saliba. As set forth herein, plaintiff may proceed on this Count at trial against defendant Laronde ONLY.

Laronde points to the language of the Application itself, which states only that, "[a]s we approached I could observe what I believed to be the handle of a handgun in the defendant's waistband." (ECF No. 40-9 at 3.) Absent additional language regarding Mouzon's alleged violation—language which appears, for instance, with respect to the traffic offenses charged—Laronde argues, the Commissioner's decision to charge Mouzon with handgun offenses is not properly attributable to Laronde.

Plaintiff argues that Laronde should be held responsible for any misapprehension on the part of the Commissioner because Laronde, knowing that there was no basis on which to charge Mouzon with handgun offenses, nevertheless included in the Application a suggestive reference to Mouzon's possession of a handgun. (ECF No. 46-1 at 24.)

The timing and facts surrounding Laronde's Application could support a jury finding that Laronde may be subject to liability for malicious prosecution. Laronde did not file the Application until March 26, 2013—that is, nearly two months after the date on which he observed the allegedly illegal activity described in the Application. While Laronde's statement that "I could observe what I believed to be the handle of a handgun in the defendant's waistband," is not inappropriate or unwarranted, his failure to clarify at that time that no weapon was found on Mouzon could permit a jury to find a motive on his part. (ECF No. 40-9 at 3.) Therefore, a reasonable jury could conclude that Laronde's Application constituted an abuse of process. Accordingly, Defendants' Motion will be DENIED with respect to plaintiff's malicious prosecution claim (Count X).

## CONCLUSION

For the foregoing reasons, Defendants' Motion (ECF No. 40) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to plaintiff's false arrest and false imprisonment claims (Counts II and III). The Motion is also GRANTED as to plaintiff's claims regarding the legality of the initial stop and defendants Burrus and Laronde's "bystander liability" under § 1983 (Count VII). Defendants' Motion is DENIED as to plaintiff's battery claims (Count I) and plaintiff's excessive force claims under § 1983 (Count VII). The Motion is also DENIED as to plaintiff's malicious prosecution claim against defendant Laronde only (Count X).[8]

Dated: July 18, 2017         _____/s/_____
                              Richard D. Bennett
                              United States District Judge

---

[8] Based on the rulings set forth herein, prior Orders of this Court (ECF Nos. 12, 41, and 54), and the submissions of counsel on the record at the July 17, 2017 Hearing, this case shall proceed to trial beginning on Monday, July 24, 2017 on the following counts:

**Count I** – Battery (against all defendants)
**Count II** – Excessive Force Pursuant to 42 U.S.C. § 1983 (against all defendants)
**Count III** – Malicious Prosecution / Abuse of Process (against defendant Laronde).

 The parties should refer to the remaining counts as renumbered herein for purposes of trial and the submission of pretrial materials.